UNITED STATES v. TWO HUNDRED AND TWENTY PATENTED
MACHINES.

(District Court, E. D. Pennsylvania.   February 5, 1900.)

No. 4.

INTERNAL REVENUE—FORFEITURE—MACHINERY LEASED BY CIGAR MANUFAC-
TURER.
Under Rev. St. § 3400, providing that a cigar manufacturer who violates the provisions of the internal revenue law relating to his business shall, in addition to other penalties, forfeit to the United States all machinery, tools, etc., "which shall be found in his possession or in his manufactory, and used in his business as such manufacturer," the fact that machinery used by a manufacturer guilty of a violation of the law was leased from a third person, who was ignorant of such violation, will not prevent its forfeiture, but the owner must be held to have acted with the knowledge that the property would be subject to forfeiture if the business was unlawfully conducted, and to have taken the risk.

This was an information for forfeiture of machines used by a cigar manufacturer for violations of the internal revenue law, which was resisted by interveners claiming ownership of such machines.

James M. Beck, U. S. Atty., and Francis F. Kane, Asst. U. S. Atty.
H. M. North, for claimant for rent.

McPHERSON, District Judge.   In July, 1899, the firm of William M. Jacobs & Co. was carrying on the business of manufacturing cigars in Lancaster, Pa., and was using for that purpose 220 patented machines known as "suction tables" and "bunching machines."   Upon the 10th day of that month the collector of internal revenue for the Ninth collection district seized these machines, alleging that the firm had violated the laws regulating the manufacture of cigars. Shortly afterwards the district attorney filed an information in this court seeking to condemn the machines for three separate violations of section 3400 of the Revised Statutes.   That section reads as follows:

"Every manufacturer of cigars who removes or sells any cigars without payment of the special tax as a cigar manufacturer, or without having given bond as such, or without the proper stamps denoting the tax thereon; or who makes false or fraudulent entries of the manufacture or sale of any cigars; or makes false or fraudulent entries of the purchase or sale of leaf-tobacco, tobacco-stems, or other material used in the manufacture of cigars; or who affixes any false, forged, spurious, fraudulent or counterfeit stamp, or imitation of any stamp required by law, to any box containing any cigars; shall, in addition to the penalties elsewhere provided in this title for such offences, forfeit to the United States all raw material and manufactured or partly manufactured tobacco and cigars, and all machinery, tools, implements, apparatus, fixtures, boxes, barrels, and all other materials which shall be found in his possession or in his manufactory, and used in his business as such manufacturer, together with his estate or interest in the building or factory and the lot or tract of ground on which such building or factory is located and all appurtenances thereunto belonging."

The illegal acts charged in the information were that William M. Jacobs & Co. had removed cigars without affixing proper stamps, had affixed counterfeit stamps to certain boxes containing cigars, and had made false and fraudulent entries of the manufacture and sale of cigars, and of the purchase and sale of leaf tobacco, and tobacco stems, and other materials used in the manufacture of cigars, in the books required by law to be kept by the firm. Two applications to intervene and defend were made,—one by the John R. Williams Company, claiming to be the legal and bona fide owner of the machines; and the other by J. L. Steinmetz, who is the owner and lessor of the building in which the manufacture was carried on, and has a claim for rent, which he desires to pursue by distraint upon the apparatus in controversy. Both interveners unite in asking that a forfeiture be refused, and that the seizure be set aside, averring that the machines were only leased to the firm at an annual rental, and that the title to the property remains in the John R. Williams Company; averring, further, that the lessor company has no knowledge or information concerning the truth of the facts charged by the government as causes of forfeiture, but that, if they are true, the illegal acts of the firm were done without the knowledge, information, or consent of the legal owner of the machines. The firm of Jacobs & Co. has filed no answer denying the charges, and their truth is conceded by all parties concerned.

It remains, therefore, to consider whether the fact that the John R. Williams Company (assuming that company to be the legal owner) knew nothing of the unlawful acts of Jacobs & Co., and did not consent thereto, is sufficient to prevent the forfeiture asked for by the government. In my opinion, this is scarcely a disputable question. The language of section 3400 expressly declares that, if the prohibited acts are done by any manufacturer of cigars, he shall forfeit to the United States all machinery, tools, implements, apparatus, fixtures, boxes, barrels, and all other materials, which shall be found in his possession, or in his manufactory. It seems to me that this language is too plain to admit of doubt. It was argued by the interveners that the section means no more than this: that the offending manufacturer shall only forfeit such property of his own as was used in his business, and may be found in his possession; but I do not regard the argument as sound. If it should be allowed to prevail, the

mere device of hiring the apparatus necessary to carry on his business would enable the manufacturer to protect it from seizure by the government, and would permit him to carry on an illegal business with limited liability.

If the owner of such apparatus chooses to lease it to, or in any other way to put it into the hands of, a person engaged in the manufacture of cigars, he must be regarded as transferring the possession with the knowledge that the apparatus may be put to an unlawful use, and may, therefore, be liable to the penalty of forfeiture. He takes the risk, therefore, that the manufacturer will conduct the business in accordance with law; and, if the risk falls out against him, he cannot be heard to set up his own ignorance of the manufacturer's illegal conduct, or his own innocence of unlawful intent. A pertinent analogy, I think, may be found in the case of an owner of personal property who puts it upon the premises of a tenant. Such an owner is bound to know that the law permits the distraint of property upon the premises (if it does not fall within certain excepted classes) for the nonpayment of rent, and he cannot, therefore, be heard to complain that he did not know either that the tenant's rent was unpaid, or that his own property might be applied to pay another man's debt.

Under the facts now before the court, I think that a similar conclusion must be reached. The John R. Williams Company must be charged with the knowledge that the laws of the United States permitted all property found upon the premises of an offending manufacturer of cigars, and used in that business, to be forfeited; and must be held to have committed their machines to the possession of Jacobs & Co. with the knowledge that they might be put to an unlawful use, and might, therefore, be seized and forfeited by the government. The unlawful use being conceded, nothing remains for the court except to declare that the risk has fallen out against the legal owners of the machines, and that they must abide by the consequences. No case has been cited that has applied the particular section now being considered, but there are decisions under other sections in which a similar principle has been distinctly declared. Dobbins' Distillery v. U. S., 96 U. S. 395, 24 L. Ed. 637; U. S. v. Two Bay Mules (D. C.) 36 Fed. 84; U. S. v. Two Barrels Whisky, 37 C. C. A. 518, 96 Fed. 479. In the last case the forfeiture was refused upon the ground that the owner of the offending property was not responsible for the fact that it was in the possession of the violator of the law. Upon the facts there proved, the owner was as innocent as if his property had been stolen from him, and then put to the illegal use. Here there is the vital difference that the machines in controversy were deliberately put into the possession of the manufacturer, who was thus enabled to violate the law in the use of the property, and actually did put it to an unlawful use. The defense set up by the interveners is overruled, and a decree of forfeiture will be entered.