**UNITED STATES of America**
**Plaintiff–Appellee,**

v.

**Roland PRITCHETT, Defendant–**
**Appellant.**

No. 00–1160.

United States Court of Appeals,
Sixth Circuit.

July 9, 2002.

Before NELSON, CLAY, and GARWOOD, Circuit Judges.*

GARWOOD, Circuit Judge.

Defendant–Appellant Roland Pritchett (Pritchett) appeals his 18 U.S.C. § 922(g)(1) conviction and sentence. He raises challenges to the district court's denial of his motion to suppress and to the sufficiency of the evidence relied on during the sentencing phase. We affirm.

**Facts and Proceedings Below**

On November 5, 1997 special agent Scott Toth of the Bureau of Alcohol, Tobacco, and Firearms applied for and received a federal search warrant for 15744 Sorrento, Detroit, Michigan, Pritchett's residence. On November 6, 1997, the search warrant was executed under Toth's direction. Officers seized several items, including firearms and ammunition. On June 8, 1998, an indictment was returned against Pritchett in the United States District Court for the Eastern District of Michigan, Southern Division charging a violation of 18 U.S.C. § 922(g)(1), which prohibits a convicted felon from possessing a firearm or ammunition in or affecting commerce. Pritchett had a previous felony conviction for possession of cocaine with intent to distribute.

The affidavit presented by agent Toth when he secured the search warrant was largely premised on a statement given to the Detroit Police by Claudia Lewis on November 4, 1997. On July 1, 1997 Lewis and her cousin, Tamika Wilson, had filed a complaint with the Detroit Police to the effect that they had been abducted, robbed, and raped at gunpoint two nights earlier by two men. Lewis asserted that she had been taken to the home of one of the men. In the July 1997 statements neither woman could name either the perpetrators or the addresses to which they had been taken. In her November 4 witness statement, Lewis asserted that she had observed boxes of firearms and a machine gun in her attacker's home. She had not mentioned this information in her July police report. Pritchett had been charged and acquitted of the sexual assault in state court.

Pritchett filed a motion to suppress the evidence seized during the execution of the search warrant. Pritchett requested that the district court hold a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), regarding the alleged material omissions in the affidavit used to procure the search warrant. This request was denied. Pritchett also argued that the search warrant was premised on stale information and that it failed to describe particularly the place to be searched or things to be seized. After oral argument, the district court denied Pritchett's motion to suppress. Pritchett entered a conditional plea of guilty to Count 2 of the indictment, which charged him with possession of a Norinco assault rifle. Pritchett's plea preserved for appeal the issues raised in the motion to suppress. A seven-hour sentencing hearing was conducted on February 8, 2000.

At the sentencing hearing, Lewis testified regarding the sexual assault. Michael

---

* The Honorable William L. Garwood, United States Circuit Judge for the Fifth Circuit, sitting by designation.

Long, a former cellmate of Pritchett's, testified that Pritchett had confessed the rape to him. On cross-examination, Pritchett's counsel suggested that Long may have manufactured his testimony to receive a reduction in his own sentence but no evidence was presented to prove that Long received any benefit from testifying. Agent Toth testified regarding the search warrant and the manner of its execution. The defense called several witnesses, including Pritchett, attempting to demonstrate inconsistencies in Lewis's testimony about the sexual assault.

The sentencing court found that the Government had proven by a preponderance of the evidence that Pritchett had used the Norinco assault rifle in a sexual assault. Accordingly, the court applied the Sentencing Guidelines § 2K2.1(c) cross reference, which provides that, if the defendant possessed a firearm in connection with another offense, then Sentencing Guidelines § 2X1.1 (pertaining to attempt, solicitation, or conspiracy) should be applied. Section 2X1.1 in turn provides that the base offense level for the object offense is to be applied. Thus the court applied § 2A3.1 (pertaining to criminal sexual abuse), resulting in a base offense level of 27 and a total adjusted offense level of 32. Pritchett was sentenced to 120 months' imprisonment, which, pursuant to 18 U.S.C. § 924(a)(2), is the statutory maximum for a violation of 18 U.S.C. § 922(g).

Pritchett appeals the denial of his motion to suppress the evidence and urges this court to suppress the evidence and vacate his conviction. In the alternative, Pritchett appeals the sentencing order and urges this court to remand this case for resentencing. We affirm.

**Discussion**

1. Search Warrant Issues

In reviewing the district court's decision on a motion to suppress evidence, we review the district court's findings of fact for clear error and the district court's legal conclusions *de novo*. *United States v. Atkin*, 107 F.3d 1213, 1216 (6th Cir.1997).

**The *Franks* Hearing Issue**

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

*Franks*, 438 U.S. at 155–56. Pritchett attempts to show "reckless disregard for the truth" by arguing that agent Toth's affidavit omitted to state that Lewis had not mentioned seeing crates of guns or ammunition at Pritchett's residence when she first reported the alleged sexual assault to the police and that she had referred to Pritchett and the other rape suspect as "strangers" although she admitted that she had seen them at a party earlier the same night.[1] Pritchett argues that this information reflects poorly on Lewis's credibility and that its omission by agent Toth amounts to a reckless disregard for the truth of her statements.

■ Pritchett need not show that Lewis's statements were in fact false, he must show that the government affiant—agent Toth—had reckless disregard for whether they were true. *See United States v. Gia-*

---

1. In his brief to this court, Pritchett also asserts that Lewis said nothing about seeing a machine gun in her initial police report. However a copy of the police report, which appears in the record, reflects that Lewis and Wilson did allege that their assailants held them at gunpoint and that an "AK-47" was mentioned.

*calone*, 853 F.2d 470, 475–76 (6th Cir. 1988). To obtain a *Franks* hearing on the issue, Pritchett's preliminary showing must be "substantial." *Id.* Because Pritchett did not make a substantial preliminary showing that agent Toth demonstrated reckless disregard, we affirm the district court's decision that a *Franks* hearing was unwarranted.

"Although material omissions are not immune from inquiry under *Franks*, we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official misconduct than one which affirmatively includes false information." *Atkin*, 107 F.3d at 1217. The alleged omissions here do not present a significant question of official misconduct.[2] At best, the facts alleged by Pritchett would impeach Lewis's credibility only slightly and that only if agent Toth engaged in the strained analysis Pritchett urges. *Cf. Franks*, 98 S.Ct. at 2684 ("Allegations of negligence or innocent mistake are insufficient."). Additionally, the affidavit did include information which would indicate to the magistrate specific reasons for agent Toth to find Lewis's statements credible, such as Lewis's honorable discharge from the United States Marine Corps and her familiarity with small arms weaponry. *Cf. Atkin*, 107 F.3d at 1217 (affidavit included information about informants' criminal history from which magistrate could infer that informants were of questionable veracity). We hold that the district court did not err by refusing to hold a *Franks* hearing.

### The Staleness Issue

Pritchett argues that the information on which the warrant was based was stale because Lewis claimed to have seen the weapons in Pritchett's house on June 29, 1997 but the warrant did not issue until November 5, 1997, more than four months later. Thus, Pritchett argues, agent Toth's affidavit was insufficient to support probable cause for issuing the warrant.

"The standard of review for a staleness determination is the same as the standard for determining the sufficiency of an affidavit. In sum, a magistrate must determine whether, under the totality of the circumstances, probable

---

2. Indeed it is not clear that these "omissions" were even present. In his affidavit, agent Toth described the initial police report in which Lewis and Wilson reported the rape alleged to have occurred on June 29, 1997. In a separate paragraph, agent Toth records that he received a sworn statement from Lewis on November 4, 1997 and that Lewis, in this statement, "stated the same account of events that were previously given to Detroit Police Investigators regarding her abduction, and rape by Pritchett *as well as* her observation of Pritchett's weapons." (emphasis added). The affidavit then reports Lewis's observation of crates of weaponry in Pritchett's house. Pritchett complains that the affidavit omits to state that Lewis did not mention the crates in her initial report. But the logical reading of the affidavit is that Lewis added the information about the crates in her November 1997 statement though she had not mentioned them in her initial statement. Re-

garding the fact that Lewis initially classified the rape suspects as "strangers", that alleged omission has little materiality. The "strangers" reference comes from a pre-printed preliminary complaint form that was filled out by the officer taking down the complaint, not by Lewis. "Strangers" was not necessarily Lewis's own term. A section of the pre-printed form labeled "victim-perpetrator relationship" has space to check one of four boxes labeled respectively "related", "acquainted", "strangers", and "unk." (presumably, "unk." is the abbreviation for "unknown"). From among these choices, the officer taking the report elected to check the "strangers" box. This is not inconsistent with the fact that the perpetrators were persons Lewis had encountered only briefly at a party earlier the same night and that neither Lewis nor Tamika Wilson were able to provide the officer with the perpetrators' names at the time of the complaint.

cause exists to issue the warrant. . . . [T]his Court will only reverse a magistrate's decision to grant a warrant if it was arbitrarily exercised."

*United States v. Greene,* 250 F.3d 471, 480 (6th Cir.2001) (internal citations omitted). The test for staleness is flexible, taking account of numerous factors. *Id.* This court has identified the following relevant factors: "The character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998) (citation omitted).

■ All of the above factors weigh against a finding of staleness in the instant case. The suspected crime was possession of crates of firearms and ammunition. Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time. Lewis asserted that she saw more than three "crates" of weapons in Pritchett's house. It might well be expected that crates of weapons would be stored semi-permanently in a house. The criminal was not nomadic but entrenched. Pritchett was a long-time resident of the house, which was owned by his parents. The search warrant affidavit stated that Pritchett had reported 15744 Sorrento as his address as late as October 27, 1997, *cf. Spikes,* 158 F.3d at 924 (recent information may corroborate otherwise stale information), and that the utility accounts for the house had been under Pritchett's father's name since 1976. The place to be searched—Pritch-

ett's home—was Pritchett's "secure operational base."

We hold that the district court did not err in finding that the affidavit was not based on stale information. Given the totality of the circumstances, the magistrate's decision that probable cause existed to grant a warrant was not arbitrarily exercised.

**The Particularity Issue**

Pritchett argues that the warrant failed to describe with particularity the items to be seized as required by the Fourth Amendment because the items to be seized were described on an attachment that was not physically attached to the warrant at the time of the warrant's execution. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This court applies a *de novo* standard of review for determining whether the warrant sufficiently meets the particularity requirement. *See United States v. King,* 227 F.3d 732, 750 (6th Cir.2000).

On its face, the warrant issued by the magistrate did not describe the things to be seized. In place of a description, the warrant references "attachment B."[3] It is undisputed that attachment B described the things to be seized with sufficient particularity and Pritchett does not assert that the agents searched for items not described in attachment B. Attachment B was not physically attached to the warrant at the time of the warrant's execution; attachment B was attached to the search warrant affidavit, which was placed under seal when the search warrant was issued. There is no contention that the magistrate

---

**3.** In place of a description of the place to be searched, the warrant referenced "attachment A," which described Pritchett's residence.

On appeal, Pritchett does not challenge the sufficiency of the description of the place to be searched.

never saw attachment B. Agent Toth, the affiant, directed the team of officers who executed the warrant and there is no contention that agent Toth was unaware of the contents of attachment B.

"The Fourth Amendment does not necessarily require that government agents serve a warrant, or an attachment thereto, prior to initiating a search or seizing property." *Frisby v. United States*, 79 F.3d 29, 32 (6th Cir.1996). Absent a showing of prejudice, irregularities in ministerial procedures do not void an otherwise constitutional search. *Id.* In *Frisby*, the plaintiff brought a Federal Rule of Criminal Procedure 41(e) motion to return and argued that the search was illegal because he was not served with an attachment, which described the items to be seized. The court held that the plaintiff was not prejudiced when the warrant was otherwise valid, agents conducted the search in accordance with the warrant and seized only items enumerated in the attachment, and, furthermore, agents provided the plaintiff with an inventory of the items seized and later provided a copy of the attachment.

Similarly, Pritchett was not prejudiced in the instant case. The agents provided Pritchett with a copy of the warrant, without attachment B, because the attachment was sealed. Agent Toth testified that, before the search began, he informed Pritchett why the officers were there and what they would be searching for. Pritchett does not argue, nor did he present any evidence, that the search was not conducted in accordance with the warrant. The officers provided Pritchett with a receipt for the items seized prior to leaving the residence. Additionally, the fact that agent Toth, the affiant, was in charge of executing the search minimized any possibility of its going beyond the scope of the warrant. "[C]ourts have taken into account facts known by the executing officer

but not specifically stated in the affidavit or warrant to validate a search." *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir.1989). In *Gahagan*, the address in the warrant's description of the place to be searched was not technically correct. The address given for the premises to be searched was the correct address for a house on the premises, but incorrect for an adjacent cabin, which had its own street number. The affidavit sufficiently included the cabin in its description of the place to be searched. The affidavit was not attached to the warrant but the affiant executed the warrant. The search was held to be valid. *Id.* at 1499. For similar reasons, the search was valid in the instant case. The Fourth Amendment's requirements were satisfied and we hold that the district court did not err in refusing to suppress the evidence on this basis.

### Summary

Because we hold that the district court committed no error in refusing to suppress the evidence seized pursuant to the search warrant, we affirm Pritchett's conviction. We now turn to the sentencing issues.

2. Sentencing Issues

**Standard of Proof**

Pritchett argues that, under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the sentencing court, when applying the Sentencing Guidelines, should not have relied on its preponderance-of-the-evidence findings about the sexual assault since Pritchett had been acquitted of the sexual assault in state court. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362—63. Pritchett argues that it was constitutional error for the sentencing court to

increase his base offense level because of the court's conclusion that a preponderance of the evidence established that Pritchett used the assault rifle during a sexual assault on Lewis.

Pritchett stands convicted of an offense for which the maximum statutory prison term is ten years, 18 U.S.C. § 924(a)(2). Pritchett was sentenced to ten years in prison. Pritchett's argument relies on the fact that ten years becomes the *minimum* guideline sentence under the Sentencing Guidelines when the sexual assault is factored in.[4] This argument is without merit.

■ This court has recognized that "a fact that increases the applicable *statutory* penalty range" may implicate *Apprendi* concerns. *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir.2000) (emphasis added). But *United States v. Harris*, 238 F.3d 777 (6th Cir.2001) (*per curiam*), explained that *Apprendi* does not alter the application of the Sentencing Guidelines when "the sentence imposed does not exceed the statutory maximum for the crime charged in the indictment." *Id.* at 779. Pritchett's sentence clearly does not exceed the statutory maximum for the crime charged; it is exactly equal to the statutory maximum. The *Flowal* formulation suggests that *Apprendi* concerns may arise when a fact increases the applicable mandatory *statutory* minimum. Pritchett's sentence was the minimum produced by applying the Sentencing Guidelines, but the Sentencing Guidelines are neither statutory nor mandatory. *See, e.g.*, USSG § 5K2.0 (policy statement regarding grounds for departure). The Supreme Court has consistently upheld applications of the Sentencing Guidelines that impose sentences that do not exceed statutory limits. *See, e.g.*, *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475, 1477–78, 140 L.Ed.2d 703 (1998); *see also Apprendi*, 120 S.Ct. at 2366 n. 21 (reaffirming the continued vitality of *Edwards*).

Pritchett's sentencing did not violate the rule of *Apprendi*. Preponderance of the evidence was the appropriate standard of proof for the sexual assault sentencing factor. *See United States v. Garcia*, 252 F.3d 838, 843 (6th Cir.2001). We now turn to Pritchett's claim that the proof did not meet the preponderance of the evidence burden.

**The Sentencing Court's Factual Findings**

We review factual findings by a sentencing court for clear error. *United States v.*

---

4. The sentencing court applied USSG § 2K2.1(c)(1)(A), cross-referencing to § 2X1.1(a), in turn cross-referencing to § 2A3.1 (pertaining to criminal sexual abuse), which established a base offense level of 27. Applying adjustments, Pritchett's total offense level was 32. The calculation included an upward adjustment of eight levels that would not have been included if the sexual assault were not considered, +4 levels because the offense was committed using a weapon, and +4 levels because the victim was abducted. The offense level of 32 and criminal history category of III yielded a sentencing range of 151—188 months; because that exceeded the maximum term of ten years (120 months) for a § 922(g) conviction, *see* 18 U.S.C. § 924(a)(2), the Sentencing Guidelines provided that the sentence be set at 120 months.

Without factoring in the sexual assault, Pritchett would have been subject to a base offense level of 22 under Sentencing Guideline § 2K2.1(a)(3). USSG § 2K2.1(a)(3) provides that the base offense level for an 18 U.S.C. § 922(g) violation is 22 if the offender had one prior felony conviction (for a violent or controlled substance offense) and used a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30). Pritchett had one prior controlled substance felony conviction and his offense here involved a Norinco gun, which is specifically described in 18 U.S.C. 921(a)(30). His adjusted offense level would be 19 (it would include the 3 level downward adjustment for acceptance of responsibility but not the 8 level upward adjustment for factors involved in the sexual assault) yielding a sentencing range of 37—46 months.

*Williams,* 18 U.S.C. § 3742(e); 940 F.2d 176, 180 (6th Cir.1991). "A finding is clearly erroneous only when, although there may be some evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Tilford,* 224 F.3d 865, 868 (6th Cir.2000) (internal quotation marks omitted). "[T]he government bears the burden of proving a sentencing enhancement by a preponderance of the evidence." *United States v. Bahhur,* 200 F.3d 917, 924 (6th Cir.2000). In the instant case, the sentencing court found that the government had proven by a preponderance of the evidence that Pritchett used the Norinco rifle in the course of a sexual assault on Lewis. We review this finding for clear error.[5]

Pritchett's argument is primarily a challenge to the credibility of the government's witnesses. He points especially to alleged inconsistencies in Lewis's testimony. He also questions the reliability of Long, who testified that Pritchett confessed the rape to him when the two men were cellmates. Pritchett points to his own testimony, which gave a version of events that conflicted with Lewis's. At the sentencing hearing, Pritchett testified that the sex with Lewis was consensual and that he paid her for sex. Pritchett also relies on the testimony of other witnesses, which he asserts is inconsistent with Lewis's version of the events.

On review of a sentencing proceeding, "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses." 18 U.S.C. § 3742(e). In the instant case, the sentencing court made express findings regarding witness credibility. It expressly found that Lewis was a credible witness, despite discrepancies in her testimony. It found that there was no evidence that Long had anything to gain by testifying as he did and that, in fact, Long put himself at risk by testifying. Such determinations of witness credibility are due considerable deference. *United States v. Moses,* 289 F.3d 847 (6th Cir.2002). "We are generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor." *Peveler v. United States,* 269 F.3d 693, 702 (6th Cir.2001).

■ Pritchett's argument attempts to bring several factors into play, including allegations of prostitution, extortion, and questionable behavior on Lewis's part. But the only elements essential to the enhancement applied by the sentencing court are (1) the use or possession of a firearm or ammunition (2) in connection with the commission or attempted commission of a sexual assault that (3) involved an abduction. *See* USSG §§ 2K2.1(c), 2X1.1, 2A3.1. During the sentencing hearing, the determination of these facts came down largely to "he said, she said." Pritchett said he did not; Lewis said he did. In addition to the considerable deference we owe to the sentencing court, other factors corroborate that court's determination that Lewis was the more credible witness. Lewis is an honorably discharged former Marine who is familiar with military weaponry. From the time of her initial police report, she consistently reported that Pritchett abducted and raped her. She consistently reported that her attacker had an AK–47–type rifle and testified that the Norinco rifle seized from Pritchett's home

---

**5.** Pritchett correctly points out that the sentencing court's application of the Sentencing Guidelines to the facts is a legal determination reviewed *de novo. See Bahhur,* 200 F.3d at 924. But his argument challenges only the factual findings about the sexual assault rather than the sentencing court's legal conclusions.

looked like the rifle he had used on the night of the attack.[6] The alleged discrepancies that Pritchett highlights do not necessarily fatally undermine Lewis's testimony on the essential elements.

We are not "left with the definite and firm conviction that a mistake has been committed." *Tilford,* 224 F.3d at 868. Therefore, we affirm the sentencing court's factual findings and hold that they support that court's application of the Sentencing Guidelines to enhance Pritchett's sentence.

### Conclusion

Because we conclude that the district court committed no error reversible error in any of the respects claimed, we AFFIRM.

---

6. Pritchett has not challenged Lewis's identification of the gun involved.